J-A04028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN FELIPE DELGADO JAVIER | : | |
| | : | |
| Appellant | : | No. 653 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 22, 2024
In the Court of Common Pleas of Union County Criminal Division at
No(s):  CP-60-CR-0000328-2022

BEFORE:  LAZARUS, P.J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:                **FILED: MAY 6, 2025**

Appellant Steven Felipe Delgado Javier appeals from the judgment of sentence following his convictions for rape of a child and aggravated indecent assault of a child.[1]  On appeal, Appellant raises claims concerning the trial court's denial of a motion for a mistrial, ineffective assistance of counsel, and the weight of the evidence.  We affirm.

The facts of this case are well known to both parties.  Briefly, the Commonwealth alleged that Appellant engaged in a course of conduct during which he sexually assaulted his daughter, D.J., when she was four years of age.  Following an investigation, the Commonwealth charged Appellant with one count each of rape of a child and aggravated indecent sexual assault of a child.

---

[1] 18 Pa.C.S. §§ 3121(c) and 3125(b), respectively.

Following a two-day trial, a jury convicted Appellant of the above-referenced charges. The trial court sentenced Appellant to an aggregate term of twenty to forty years' incarceration, to be followed by three years' probation. Appellant timely filed post-sentence motions, followed by a supplemental post-sentence motion. The trial court denied Appellant's post-sentence motions without a hearing. Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether the trial court erred in denying the defense motion for a mistrial and in giving a belated, inadequate curative instruction after the [trooper] testified that Appellant took a polygraph test because after hearing such testimony, the jury would have naturally assumed that Appellant failed the test and was guilty[?]

2. Whether the trial court erred in denying the post-sentence motion for a new trial due to improper expert testimony given that Appellant received such obvious ineffective assistance of counsel when trial counsel failed to object to a medical doctor's improper expert testimony that young children essentially never lie about sexual abuse that the court should have considered the claim immediately pursuant to **Commonwealth v. Holmes**, 79 A.3d 562, 563-64 (Pa. 2013)[?]

3. Whether the trial court erred in denying the post-sentence motion for a new trial where the verdict was against the weight of the evidence[?]

Appellant's Brief at 5 (some formatting altered).

- 2 -

**Appellant's Motion for Mistrial**

In his first issue, Appellant contends that the trial court erred when it denied his motion for a mistrial following a state trooper's reference, in the presence of the jury, to the fact that Appellant took a polygraph test. *Id.* at 25. Appellant argues that because the testimony at issue occurred at the beginning of the trial, the jury would "naturally infer" that Appellant took the polygraph test and failed it. *Id.* at 31. Appellant further argues that the trial court did not provide a timely curative instruction to the jury regarding the inadmissibility of polygraph tests. *Id.* at 32-33. Finally, Appellant notes that "[e]very case in which an appellate court has affirmed a conviction involved a suggestion that a defendant offered to or was asked to take a polygraph test, not that a defendant actually took one." *Id.* at 33.

When reviewing a trial court's decision to deny a motion for mistrial, we are governed by the following standard of review:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

*Commonwealth v. Bennett*, 225 A.3d 883, 890 (Pa. Super. 2019) (citations omitted). This Court has defined abuse of discretion as "not merely an error of judgment, but [] rather the overriding or misapplication of the law or the exercise of judgment that is manifestly unreasonable, or the result of bias,

- 3 -

prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Lawrence*, 313 A.3d 265, 275 (Pa. Super. 2024) (citation omitted).

"The general rule in this Commonwealth is that any reference to a polygraph test that raises an inference concerning the guilt or innocence of a defendant is inadmissible at trial." *Commonwealth v. A.R.*, 990 A.2d 1, 6 (Pa. Super. 2010) (emphasis and citation omitted). As our Supreme Court has stated: "Not every mention of a polygraph is prejudicial or worthy of a mistrial." *Commonwealth v. Fortenbaugh*, 69 A.3d 191, 195 (Pa. 2013). We find our Supreme Court's decision in *Fortenbaugh* to be especially instructive. Indeed, the *Fortenbaugh* Court set forth the following test for determining whether a reference to a polygraph test is prejudicial and would warrant a new trial:

> In determining whether a testimonial reference to a polygraph test warrants a mistrial, three factors are generally considered: (1) whether the Commonwealth prompted the reference to the polygraph test; (2) whether the reference suggested the results of the polygraph; and (3) whether the trial court issued prompt and adequate instructions regarding the unreliability and inadmissibility of polygraph tests. *See Commonwealth v. Miller*, 439 A.2d 1167, 1171 (Pa. 1982). After consideration of these three factors, courts must assess the resulting prejudice to the defendant, an evaluation which turns on whether such reference, considered in light of the circumstances of the case, causes an inference to arise as to the defendant's guilt or innocence. *Id.* at 1170.

*Fortenbaugh*, 69 A.3d at 193.

Additionally, this Court has explained that "a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice." *Commonwealth v. Fletcher*, 41 A.3d 892, 894-95 (Pa. Super. 2012) (citation omitted). As this Court has recognized, it is well settled that a jury is presumed to follow a trial court's curative instruction. *Commonwealth v. Patterson*, 180 A.3d 1217, 1228 (Pa. Super. 2018).

In *Fortenbaugh*, the Commonwealth played a recording of an interrogation between the defendant and a detective, during which the detective asked the defendant if he would submit to a polygraph test. *Fortenbaugh*, 69 A.3d at 192. The defendant immediately objected and the trial court held a discussion between the parties at sidebar. *Id.* Following the discussion, the trial court in *Fortenbaugh* provided the jury with the following curative instruction:

> Ladies and gentlemen, I just want to let you know what's going on so you understand. On this CD, audio, you heard—on this CD, you heard [the detective] mention the ability of [the defendant]— requested him to take a polygraph. We all know that.
>
> So that you understand, just the asking of that question is completely irrelevant to these proceedings and is not evidence in this case that is worth anything whatsoever.
>
> You're not going to know whether he took one or whether he didn't and if he did what the results are. And the reason for that is that polygraphs are highly unreliable and are not good evidence.
>
> So whether he agreed to take one or not and, if he did, what the results are, are completely irrelevant and are not whatsoever to be considered by any of you with respect to your deliberations and to be used as evidence in this case, okay. Are we all clear on that?

That's why they're not admissible, nor is whether—I mean, it's just irrelevant. It is an investigative tool that's used in some situations. It's nothing that is compelling under the law in terms of someone charged with a crime.

Having to take one or—you know, it doesn't matter, and it's not to be considered by you as evidence. So you're not going to know whether [the defendant] took one or not and, if he did, what the results are, and you can't use that as any evidence against him, the mere fact that he was asked that question by [the detective], okay. You may continue the audio.

*Id.* at 194-95.

In the instant case, the record reflects that during direct examination, Pennsylvania State Police Trooper James Nestico testified that his investigation would have included an interview with Appellant and a polygraph test. N.T. Trial, 9/27/23, at 73. Appellant immediately requested a sidebar discussion. *Id.* Following the sidebar discussion, the trial court sent the jury out of the courtroom at 11:08 a.m. and held a further on-the-record discussion with the parties. *Id.* at 79. At the conclusion of the on-the-record discussion, the trial court took a recess to conduct further research. *Id.* at 82. At 11:30 a.m., the jury re-entered the courtroom and the trial court provided the following instruction:

All right. So what I want to -- I am sustaining -- the objection was to the reference to [Appellant] being asked to take or taking a polygraph test.

And I'm going -- I've sustained the objection. I'm going to strike from the record any reference to any polygraph test in this case and that means it is no longer evidence that it ever happened or that he was asked to take one. And I want to explain why.

Just asking -- or just referencing a polygraph is completely irrelevant to these proceedings and it's not evidence in this case that's worth anything whatsoever.

So you're not going to know whether he took or whether he didn't take a polygraph; or if he did, what the results were. And the reason for that is that polygraphs are not admissible evidence. They are not reliable enough to be good evidence in a court of law.

So whether [Appellant] took one, whether he agreed to take one, whether he took one or not, if he did, what the results were, those are completely irrelevant and not whatsoever to be considered by any of you with respect to your deliberations and cannot be used as evidence in this case.

It's just an investigative tool that's sometimes used in some situations. It's nothing that's compelled under the law in terms of anyone, any defendant who's charged with a crime.

So to put a fine point on this it is not to be considered by you as evidence. You're not to wonder about it or if it happened or what the results were because even if you knew that information, you could not use that as evidence in this case.

So the mere fact that the word polygraph was mentioned by the trooper will be completely disregarded.

Are we all clear about my instruction on that? I see all nodding heads, and I appreciate that very much.

So with that cautionary instruction, we will resume the testimony of the trooper. Thank you.

*Id.* at 87-89. The trial court ultimately denied Appellant's motion for a mistrial after providing the parties further opportunity for argument. *Id.* at 98.

Following our review of the record, we conclude that the trial court did not abuse its discretion by denying Appellant's motion for a mistrial. *See Bennett*, 225 A.3d at 890. As noted previously, "[n]ot every mention of a polygraph is prejudicial or worthy of a mistrial." *Fortenbaugh*, 69 A.3d at

- 7 -

195. Here, the record confirms that (1) the Commonwealth did not prompt the officer's reference to the polygraph test; (2) the officer did not give any testimony concerning the results of the polygraph test; and (3) the trial court issued "prompt and adequate instructions regarding the unreliability and inadmissibility of polygraph tests," which was substantially similar to the instruction to the one issued by the trial court in **Fortenbaugh**. **Compare id.** at 194-95; **with** N.T. Trial, 9/27/23, at 87-89. Further, we are unpersuaded by Appellant's argument that a delay of approximately thirty minutes in providing the jury with a curative instruction resulted in unfair prejudice and we agree with the trial court's well-reasoned and thorough analysis of this claim. **See** Trial Court Op. at 3-7 (unpaginated) (citations omitted). Further, we reiterate that the jury was presumed to have followed the trial court's instruction. **See Patterson**, 180 A.3d at 1228. For these reasons, we conclude that Appellant is not entitled to relief on his first issue.

**Ineffective Assistance of Counsel**

In his second issue, Appellant raises a claim of ineffective assistance of counsel. Appellant's Brief at 34-48. Specifically, Appellant argues that his trial counsel, Kyle W. Rude, Esq., "obviously should have recognized that medical doctors may not testify that young children never lie about sexual assault." **Id.** at 34. Appellant further argues that resolution of his ineffective assistance of counsel claim is "extraordinary enough" that relief is warranted on direct appeal, rather than having review delayed to collateral review. **Id.** at 35.

With respect to ineffectiveness claims, our Supreme Court has explained that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *See Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002). Our Supreme Court has recognized three exceptions to this general rule. *See Commonwealth v. Holmes*, 79 A.3d 562, 577-80 (Pa. 2013); *Commonwealth v. Delgros*, 183 A.3d 352, 361 (Pa. 2018). The first exception applies to extraordinary circumstances, when a "trial court, in the exercise of its discretion, determines that a claim [] of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted." *Holmes*, 79 A.3d at 577-78. The second exception addresses "multiple and fairly common ineffectiveness claims," which are accompanied by the defendant's "knowing, voluntary, and express waiver of [Post Conviction Relief Act[2] (PCRA)] review." *Id.* at 577-78, 580. The third exception requires "trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review." *See Delgros*, 183 A.3d at 361.

To qualify for any of these exceptions an appellant must first raise his ineffectiveness claims before the trial court, as the trial court must have an opportunity to review such a claim and for the parties to fully develop the record. *See Delgros*, 183 A.3d at 360-62; *Holmes*, 79 A.3d at 576; *see*

_____

[2] 42 Pa.C.S. §§ 9541-9546.

*also Commonwealth v. Bomar*, 826 A.2d 831, 853-54 (Pa. 2003) (recognizing an exception allowing ineffective assistance of counsel claims to be heard on direct appeal where "the claims have been raised and fully developed at a hearing in the trial court," and cautioning that lack of a trial court opinion addressing such a claim "poses a 'substantial impediment to meaningful and effective appellate review'" and "oblige[s] the appellate courts to consider matters not of record, a function that appellate courts normally do not perform[,]" *i.e.*, "to engage in fact-finding in the form of speculation concerning the strategy counsel pursued a trial, a function that [appellate courts] were ill-suited to assume" (citation omitted)).

In the instant case, Appellant raised his ineffective assistance of counsel claim in a post-sentence motion. **See** Appellant's Suppl. Post-Sentence Mot., 4/4/24, at 8-19. As noted above, the trial court did not hold an evidentiary hearing on Appellant's post-sentence motions. Accordingly, we must conclude that the parties have not developed a full record for our review. **See Holmes**, 79 A.3d at 577. Absent an evidentiary hearing on Appellant's ineffective assistance of counsel claim, we run the risk of engaging "in fact-finding in the form of speculation concerning the strategy [trial] counsel pursued at trial, a function that [we are] ill-suited to assume." **See Bomar**, 826 A.2d at 854.

Further, the record does not reflect that Appellant waived his right to subsequent PCRA review. **See Holmes**, 79 A.3d at 563-64. The trial court imposed an aggregate sentence of twenty to forty years' incarceration, to be followed by three years' probation; therefore, there is nothing to suggest that

Appellant is statutorily barred from seeking PCRA relief. *See Delgros*, 183 A.3d at 361. For these reasons, we conclude that Appellant has failed to establish any of the recognized exceptions to the general rule that claims of ineffective assistance of counsel must be deferred for collateral review. *See Grant*, 813 A.2d at 738; *see also Delgros*, 183 A.3d at 361; *Holmes*, 79 A.3d at 576. Therefore, we cannot consider Appellant's ineffectiveness claim on direct appeal. *Grant*, 813 A.2d at 738; *see also Delgros*, 183 A.3d at 361; *Holmes*, 79 A.3d at 576. Accordingly, we dismiss Appellant's claim of ineffective assistance of counsel without prejudice to Appellant's right to raise it in a timely petition under the PCRA.

## Weight of the Evidence

In his final issue, Appellant contends that the trial court erred when it denied Appellant's post-sentence motion raising a weight-of-the-evidence claim. Appellant's Brief at 48-49. Appellant specifically argues that the victim's testimony was "extremely contradictory and unreliable" and was also "vague, internally inconsistent, and difficult to follow." *Id.* at 51.

It is well-established that "[a] motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Dewald*, 317 A.3d 1020, 1037 (Pa. Super. 2024) (citation omitted). However, "[o]n appeal, our review is distinct from the standard of review applied by the trial court. We do not review the underlying weight of the evidence question. Instead, we examine the judge's exercise of discretion in ruling on that claim." *Commonwealth*

- 11 -

*v. Martin*, 323 A.3d 807, 823 (Pa. Super. 2024) (citations omitted and some formatting altered). As this Court has repeatedly stated:

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
> * * *
>
> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Spence*, 290 A.3d 301, 311 (Pa. Super. 2023) (citations omitted and formatting altered).

Here, the trial court addressed Appellant's weight-of-the-evidence claim as follows:

> It is well established that it is the jury's role to decide whether to believe some, all, or none of a witness's testimony. The victim testified that [Appellant] "put his penis in my butt" and that penetration occurred. She also testified that [Appellant] put his fingers inside her vagina. [Appellant] avers that the victim's testimony was contradictory and unreliable. [Appellant] claims that other witnesses refuted the victim's testimony.

- 12 -

> Having presided over the trial, the [trial court] finds no reason to disturb the jury's decision to credit the testimony of the victim over those other witnesses. The jury's verdict was not contrary to the evidence, it does not shock the conscious [sic], and it does not lead to the conclusion that a manifest injustice will occur if [Appellant] is not granted a new trial.

Trial Ct. Op. at 11 (unpaginated) (citations omitted).

Following our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's weight claim. *See Dewald*, 317 A.3d at 1037; *see also Martin*, 323 A.3d at 823. Although Appellant claims that the victim's testimony was contradictory and unclear, the jury was "free to believe all, none, or some of the evidence and to determine the credibility of the witnesses." *Spence*, 290 A.3d at 311 (citation omitted and formatting altered); *see also Commonwealth v. Gilliam*, 249 A.3d 257, 270 (Pa. Super. 2021) (concluding that the trial court did not abuse its discretion in denying appellant's weight challenge where he merely asked this Court to assume the role of fact-finder and reweigh the evidence in his favor). Therefore, Appellant is not entitled to relief.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>5/06/2025</u>